UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **THOMAS W. DURHAM** | * | **CIVIL ACTION NO.  11-1482** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

On April 26, 2005, Thomas Durham filed the instant application for child's insurance benefits for which he claimed eligibility following his father's death on March 28, 1993.  (Tr. 26-28).  He alleged disability since his date of birth on February 5, 1946, because of cerebral palsy.  *See* Tr. 26, 40.  The claim was denied at the initial stage of the administrative process. (Tr. 37-39).  Thereafter, Durham requested and received a September 21, 2009, hearing before an Administrative Law Judge ("ALJ").  (Tr. 67-93).  In a December 4, 2009, written decision, the ALJ determined that Durham was not disabled under the Act, finding at step one of the sequential evaluation process that he engaged in substantial gainful activity during the relevant period.  (Tr. 9-16).

Durham appealed the adverse decision to the Appeals Council. On July 7, 2011, however, the Appeals Council denied Durham's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 3-5).

On August 15, 2011, Durham sought review before this court. He contends that the ALJ's decision is tainted by legal error, and otherwise is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical

or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

    (2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

    (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

    (4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The instant claim is not the typical Title II or Title XVI claim. Rather, plaintiff seeks child insurance benefits as an unmarried dependent, who was disabled prior to the age of 22, at the time that the covered worker (in this case, his father), passed away. 20 C.F.R. § 404.350(a). Thus, with a February 5, 1946, birth date, plaintiff had to establish his own disability by February 4, 1968. *See* Tr. 16. Undermining plaintiff's current efforts, however, is the fact that from 1966 until June 30, 2001, he was self-employed in an office supply business that his father established for him. *See* Tr. 57, 70. The ALJ relied upon Durham's self-employed business activities to determine that Durham engaged in substantial gainful activity during the relevant period, thus compelling a finding of not-disabled at step one of the sequential evaluation process. (Tr. 14-16).

In so concluding, the ALJ considered the following regulation,

> **General rules for evaluating your work activity if you are self-employed**. We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements . . . We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an

immediate income for your services.  We determine whether you have engaged in substantial gainful activity by applying three tests.  If you have not engaged in substantial gainful activity under test one, then we will consider tests two and three. The tests are as follows:

**(i)  Test One:** You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business . . .

**(ii)  Test Two:** You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

**(iii)  Test Three**: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2).

The ALJ initially determined that Durham *did not satisfy* Test One, *see* Tr. 15, which presumably meant that he found that Durham engaged in substantial gainful activity under that test.  Test One, however, requires a finding that the claimant not only rendered significant services to the business, but also that he received substantial income therefrom.  20 C.F.R. § 404.1575(a)(2)(i); SSR 83-34, TITLES II AND XVI: DETERMINING WHETHER WORK IS SUBSTANTIAL GAINFUL ACTIVITY – SELF-EMPLOYED PERSONS.  In this case, to be substantial, "countable income," must have averaged more than $200 per month for the period at issue, or alternatively, be "comparable to that of unimpaired self-employed persons in [the] community who are in the same or a similar business as their means of livelihood." 20 C.F.R. §§ 404.1575(c)(1)-(2) and 404.1574(b)(2)(i).

Here, it is manifest that Durham did not average more than $200 per month in 1966-1968. His earnings statement reflects that he earned but $1,009, $2,310, and $2,002, respectively, during those years. (Tr. 50). Furthermore, there is no evidence that other similarly situated office supplies salesman/managers were earning similar sums at less than the presumptively substantial gainful activity level. Thus, the court agrees with plaintiff that the ALJ's Test One determination is not supported by substantial evidence.[1]

Nevertheless, it is manifest under the regulations and Social Security Ruling 83-34, that even if income is not substantial, a finding that the claimant engaged in substantial gainful activity may be found on the basis of tests two *or* three. SSR 83-34. Indeed, that is precisely what the ALJ proceeded to do in this case. (Tr. 15).

Plaintiff attacks the ALJ's finding as to Test Two that his work activity was comparable to that of other unimpaired individuals who were engaged in the same or similar business because the ALJ failed to specifically analyze the relevant factors. Plaintiff emphasizes that under Social Security Ruling 83-34,

> To establish comparability of work activity, it is necessary to show that the disabled person is performing at a level comparable to that of unimpaired persons, considering the following factors: hours, skills, energy output, efficiency, duties and responsibilities . . . Development must be specific. Each work factor cited above must be described in detail, showing its contribution to the business operation. General descriptions are considered inconclusive evidence for the point-by-point comparison that is required. If only a general description is possible or available, any doubt as to the comparability of the factors should be resolved in favor of the impaired individual.

SSR 83-34.

Although social security rulings are not binding on the federal courts, they are "binding on all

---

[1] Having found no evidence to support one component of Test One's dual requirements, the court need not address whether plaintiff met the other prong.

components of the Social Security Administration." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); 20 C.F.R. § 402.35 (b)(1). The Fifth Circuit frequently relies upon social security rulings when evaluating the Commissioner's decisions. *Myers, supra* (citations omitted).

Here, the ALJ recited Durham's skills, responsibilities, and duties, and determined that they were similar to others engaged in an office supply business. *See* Tr. 15. Plaintiff exclaims that this conclusory analysis transgresses the dictates of Social Security Ruling 83-34. He emphasizes that, at a minimum, plaintiff's impairment(s) caused him to be less efficient and energetic than other similarly situated workers.

While the court agrees that plaintiff likely was less efficient than a comparable salesperson, the evidence does not support a finding that plaintiff was less energetic. If anything, plaintiff had to work longer hours and expend more energy to accomplish the same tasks as a comparable salesperson. For instance, to solicit his customers, Durham either walked to their businesses or telephoned them. *See* discussion, *infra*. After the orders arrived, plaintiff physically delivered the office supplies to his customers, via hand-pulled cart. Thus, plaintiff more than compensated for any inefficiency by a proportionate increase in the other pertinent work factors. In other words, to the extent that the instant ALJ may have erred by failing to effect the specific job comparisons dictated by SSR 83-34, plaintiff has not demonstrated resulting prejudice. Consequently, any error was harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).[2]

---

[2] Where the rights of individuals are affected, an agency must follow its own procedures, even where the procedures are more rigorous than otherwise would be required. *See Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981) (citations omitted). If an agency violates its own

For Test Three, the ALJ succinctly found that it was reasonable to conclude that Durham's services were worth more than $200 per month in value to the business, and/or that a "full-time salesperson/manager/customer representative in even a less than prosperous office supply company in the 1960's would have earned at least the minimal presumptive SGA amount." (Tr. 15).

Earlier in his decision, the ALJ noted that Durham partnered with his father in an office supply business, where he worked full-time in outside sales. (Tr. 14, 70). Durham agreed that he mostly went out and sold the merchandise. (Tr.70). Moreover, because he could not drive, he went out on foot to call on businesses, and delivered their orders by cart. *See* Tr. 70. Although Durham's father was not necessarily there to help with the business on a day to day basis (at least until after he retired in 1980), he helped the business financially and took care of the books. (Tr. 70-71). Durham maintained, however, that he paid the bills on behalf of the business. *Id*. In addition, not only did Durham's father not receive a salary from the business, the business also never returned a profit. (Tr. 72).

United States Bankruptcy Judge Steven Callaway testified at the administrative hearing on Durham's behalf, and stated that Durham had good network skills, with the ability to talk to people. (Tr. 80). Judge Callaway added that Durham's business was not bad, but it also was not good. (Tr. 81). Another witness testified that Durham's father ran the business, while Durham was the outside salesman. (Tr. 90). Both witnesses agreed that the business was kept artificially afloat by outside payments from family relatives.

Obviously, neither the ALJ nor this court questions Judge Callaway's credibility.

---

rules, *with resulting prejudice*, then the underlying proceedings are tainted, and any resulting actions cannot stand. *Id*.

However, Judge Callaway did not become acquainted with how Durham's business operated until 1998. (Tr. 77). For the workings of the business prior to 1998, he relied upon what others had told him. *See* Tr. 78.

It remains uncontroverted that Durham was solely responsible for the business's sales and earned income. As the sole generator of earned income for the business, Durham's contribution to the business necessarily was essential, and invaluable irrespective of the actual sums that he received from the business.

Furthermore, even if Durham's monthly earnings did not exceed $200 during the relevant period, it is manifest that his work activity was worth at least that amount when compared to the salary that an owner would pay to an employee who was doing the same work. At a minimum, Durham was a full-time salesperson who regularly called on his customers, not only for purposes of soliciting new orders, but also to deliver their purchases. In fact, from 1977-1979, Durham enjoyed earnings in excess of the presumptively substantial gainful activity level. *See* Tr. 50 and 20 C.F.R. § 404.1574(b)(2).[3] Moreover, there is no evidence that either the structure of the business or Durham's work activities materially changed between 1966 and 1979. Thus, if Durham's work activities warranted a monthly salary that exceeded the presumptively substantial gainful activity level in 1978, it follows that his same work activities in 1966-1968 warranted a comparable level of remuneration – notwithstanding the level of earnings that were reported to the Social Security Administration. Under these circumstances, the ALJ was not required to consult outside authorities to support his decision.[4]

---

[3] He again exceeded the presumptive earnings level in 1990. *See* Tr. 39.

[4] Social Security Ruling 83-34 provides, in this regard, that,
[w]th respect to tests two and three, the degree to which evidence of comparability or worth of services should contain data supplied by outside authorities (e.g.,

The court adds that the ALJ's determination that Durham engaged in substantial gainful activity during the relevant period is consistent with the general definition of the term or concept. Under the regulations, if the claimant is working and the work constitutes "substantial gainful activity," then the Commissioner will find the claimant not disabled, regardless of the claimant's medical condition, *etc*.  20 C.F.R. §§ 404.1520(b) (emphasis added).  Furthermore,

> [s]ubstantial gainful activity is work activity that is both substantial and gainful:
>
> (a)  Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. *Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before*.
>
> (b)  Gainful work activity. Gainful work activity is work activity that you do for pay or profit. *Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized*.

20 C.F.R. § 404.1572 (in pertinent part) (emphasis added).

In this case, there is no question that plaintiff's work activity involved significant physical and mental activities.  Moreover, Durham's work activities were of the kind that was usually done for pay or profit, even if his business ultimately did not return a profit.  Accordingly, the court finds that the ALJ's step one determination is supported by substantial evidence.

### Conclusion

The ALJ in this case had the unenviable task of determining whether Durham was disabled by the time he reached the age of 22.  The court acknowledges that Durham suffers from impairment(s) that might have compelled a finding of disability for a less determined claimant

---

> county agents, etc.) will depend on the factual situation. *In many instances, familiarity with local conditions will make it unnecessary to document the file in great detail.*

SSR 83-34 (emphasis added).

who did not enjoy the same level of family support. The court further appreciates the perceived inequity that because of his dedication, indomitable spirit, and family assistance, plaintiff's eligibility for disability benefits has been compromised. Nonetheless, these considerations cannot mask the fact that plaintiff has managed to work for over 40 years, despite his impairments.[5] Throughout this period, he did not consider himself disabled, and apparently did not even apply for disability until 2005. His perseverance and strong work ethic cannot be understated and are to be commended. In the end, however, this court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).[6] That is not to say that the ALJ's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

---

[5] As of August 2011, plaintiff was employed by "My Office Products." *See* IFP Application [doc. # 2].

[6] Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here. Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence. *See e.g., Foster v. Astrue*, 2011 WL 480036 (5th Cir. Feb. 10, 2011) (unpubl.); *Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 31st  day of July 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE